IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                    CASE NO. 3:09-cr-128(1)

DAVID ZOBEL,

        Defendant.

TRANSCRIPT OF PROCEEDINGS
GUILTY PLEA

PRESIDING:  THE HONORABLE WALTER HERBERT RICE

DATE:  January 8, 2010

APPEARANCES:

Brent G. Tabacchi, Esq.
On Behalf of Plaintiff
United States of America

David P. Williamson, Esq.
On Behalf of Defendant
David Zobel

Also Present:  Agent Wendy Surikov

REPORTED BY:  DEBRA LYNN FUTRELL, CRR

Friday, January 8, 2010

                      IN OPEN COURT

                       12:18 p.m.

            THE COURT:  We do have case CR-3-09-128,
United States of America versus David Zobel.  The
Defendant is in open court with counsel, Mr. David
Williamson.  The government is present in the person of
Assistant United States Attorney, Mr. Brent Tabacchi.

            Mr. Williamson, if you and your client would
be good enough to come forward.

            (Counsel and the Defendant approached the
lectern.)

            THE COURT:  Good afternoon, sir.

            MR. WILLIAMSON:  Good afternoon, your Honor.

            THE COURT:  Mr. Williamson, have I
pronounced your client's last name correctly?

            MR. WILLIAMSON:  I believe so, your Honor,
it's Zobel.

            THE COURT:  Zobel.  Mr. Williamson, your
client, Mr. Zobel, is charged with five counts in an
Indictment.  Counts 1 and 2, coercion and enticement of
a minor.  Counts 3, 4, and 5, travel with intent to
engage in illicit sexual contact with a minor.  It's the
Court's understanding that pursuant to Plea Agreement he
will be entering a plea of guilty to Count 1 of that

Indictment charging coercion and enticement of a minor
in return for which ultimately Counts 2 through 5 will
be dismissed. This charge carries a mandatory minimum
sentence of 10 years up to life imprisonment. There is
nothing in the Plea Agreement as the Court reads it that
would allow me to impose a sentence below that mandatory
minimum.

In addition, the parties have agreed that a
proper sentencing in this case will be somewhere between
ten and 15 years, between a hundred and 20 and a hundred
and 80 months. I indicated that I was amenable to such
an agreement, that I would not, today, accept the Plea
Agreement. I will defer a decision on whether to do so.
If I find after evaluating all before me at the time of
sentencing that I can sentence within that range, so be
it. If I find that I cannot, that since I can't
sentence lower, if I find that I must sentence higher,
then you have the right, if you wish, to withdraw the
plea of guilty and begin again. Is that all to your
understanding, sir?

MR. WILLIAMSON: Yes, your Honor.

THE COURT: And Mr. Tabacchi, that of the
government?

MR. TABACCHI: Yes, your Honor.

THE COURT: Mr. Zobel, is that your

```
1   understanding?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you wish to enter a plea of

4   guilty, then, to Count 1 of the Indictment?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Before we can make a

7   determination, sir, as to whether to accept a plea of

8   guilty from you, we have to ask you certain questions.

9   And in order to guarantee that those questions are

10  answered both truthfully and completely, we do ask that

11  you take an oath.  So would you be good enough to raise

12  your right hand?

13             Do you swear to tell the truth, the whole

14  truth, nothing but the truth, so help you God?

15             THE DEFENDANT:  I do.

16             THE COURT:  All right, sir.  You are David

17  Zobel?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  How old are you, sir?

20             THE DEFENDANT:  32 years old.

21             THE COURT:  How much education have you had?

22             THE DEFENDANT:  I have a Master's degree.

23             THE COURT:  In what field?

24             THE DEFENDANT:  Music performance.

25             THE COURT:  What types of work have you done
```

1  as an adult?

2      THE DEFENDANT:  I have been a church

3  musician.  I have been a freelance classical pianist.  I

4  have been an accompanist and vocal coach and choir

5  director.

6      THE COURT:  All right, sir.  This may well

7  seem like an insulting question but it's one I have to

8  ask of everyone who appears before me, can you read and

9  write?

10      THE DEFENDANT:  Yes, sir.

11      THE COURT:  Do you have any difficulty

12  understanding me as I sit here talking to you?

13      THE DEFENDANT:  No, your Honor.

14      THE COURT:  Do you understand that by virtue

15  of just having taken an oath to tell the truth that you

16  could be prosecuted later on for perjury or false

17  swearing if it turns out that what you've told us today

18  is not true, do you understand?

19      THE DEFENDANT:  I understand you.

20      THE COURT:  Now, sir, you've indicated a

21  willingness to enter a plea of guilty to a charge of

22  coercion and enticement of a minor.  I'm going to read

23  certain facts to you.  These are the facts behind that

24  charge.  These are the facts to which you are pleading

25  guilty.  After I've read these facts to you, I will ask

1    you if they are correct.

2           According to these facts, beginning in

3    approximately December of 2008, you were residing in Ann

4    Arbor, Michigan, and beginning in December of 2008 you

5    engaged in a series of sexually-explicit on-line chats

6    with numerous minor females from around the country,

7    including a 13-year-old girl from Xenia, Ohio that we

8    will refer to as J.C.  Although you participated in

9    these chats with a wide range of purported female

10   minors, you focussed considerable attention on J.C.  In

11   particular, with the assistance of your computer, the

12   Internet and your cellular telephone, you, while you

13   were in Michigan, used on-line chats and text messaging

14   to persuade J.C. in Ohio to participate in sexual

15   activities.  Namely, oral sex with you during

16   approximately the January 2009 time frame.  During these

17   communications, you, who was then over the age of 18,

18   knew that J.C. in fact was under the age of 16 or, at a

19   minimum, you acted in reckless disregard of her actual

20   age.

21          Additionally, on or about June 2nd, 2009,

22   you once again had inappropriate sexual contact with

23   J.C.  Before doing so, you exchanged a series of text

24   messages from Michigan with J.C. in Ohio.  In these text

25   messages, J.C. asked you to help her run away from her

home.  She indicated that she would make any assistance
that he provided her worth his time -- worth your time.
You responded that you were horny and would get J.C. a
hotel room.  Hmmm.  End of quote.  You further inquired
of J.C. and one of her friends who was 12 would, quote,
do anything you wanted, close quote, if he helped them,
J.C. and her friend, run away from Ohio.

          You ultimately proceeded to Xenia where you
picked up the two minor girls.  You then drove them to a
parking garage in Toledo, Ohio.  At this location you
had both J.C. and her 12-year-old companion perform oral
sex on you.  You further took pictures of the girls
posing either in their bras or with their bare breasts
exposed.  You then left the girls in the parking garage
giving each of them $20.

          Around the time you participated in these
sexual activities with J.C. and her friend, you were
also downloading from the Internet and distributing to
other people known images of child pornography.  For
example, for instance, you downloaded from the Internet
to your computer at least 61 images of child
pornography, at least one of which had moved or been
transported in interstate commerce.  Are those facts
correct?

          THE DEFENDANT:  Those are largely correct.

1   There are two minor changes I believe that we have in

2   that Statement of Facts but aside from those, yes, your

3   Honor.

4              MR. WILLIAMSON:  Your Honor, may I --

5              THE COURT:  Give me one moment, please.

6              (Brief pause.)

7              THE COURT:  Go ahead, Mr. Williamson.

8              MR. WILLIAMSON:  Your Honor, my apologies to

9   the Court.  The U.S. Attorney and I made some

10  last-minute changes to the Statement of Facts.

11  Particularly, there's one paragraph and one phrase in

12  the last paragraph that were changed.  And I apologize

13  that I did not get that before the Court.  But the

14  Statement of Facts that you read is not the final

15  version that he signed here this morning.

16             THE COURT:  Would someone give me the final

17  version?

18             MR. WILLIAMSON:  Thank you, your Honor.

19             MR. TABACCHI:  Your Honor, we delivered a

20  copy to your chambers, this morning.

21             THE COURT:  Let's begin at the beginning.

22  Beginning in approximately -- delete everything, Mr.

23  Zobel, that I have said, although certainly it will

24  remain on the record, and let me again read you a

25  Statement of Facts that are behind the charge to which

you are pleading guilty. These are the facts set forth
against you in Count 1 of the Indictment. After I have
read these facts, I will ask you if they are correct.

Beginning in approximately December 2008,
you were residing in Ann Arbor, Michigan and you engaged
in a series of sexually explicit on-line chats with
numerous minor females from around the country including
a 13-year-old girl from Xenia, Ohio whom we will refer
to as J.C. Although you participated in these chats
with a wide range of purported female minors, you
focussed considerable attention upon J.C. In
particular, with the assistance of your computer, the
Internet and your cellular telephone, you, while you
were in Michigan, used on-line chats and text messaging
to provide J.C. in Ohio -- or rather to persuade J.C. in
Ohio to participate in sexual activities. Namely, oral
sex with you during approximately the January 2009 time
frame. During these communications, you, who were then
over the age of 18, knew that J.C. in fact was under the
age of 16 or, at a minimum, acted in reckless disregard
of her actual age.

Additionally, on or about June 2nd, 2009,
you once again had inappropriate sexual contact with
J.C. Before doing so, you exchanged a series of text
messages from Michigan with J.C. in Ohio. In these text

messages, J.C. informed you that she and a friend of
hers whom J.C. described as, quote, 14 and yes, she is
cute, close quote, had run away from home.  You
responded, quote:  Maybe I should drive down and get you
two a hotel room, hmmm.  Close quote.  J.C. replied,
quote:  If you come down here, friend -- and friend is
added to make the sentence more easily understandable --
quote, if you come here, the friend will do whatever you
want, close quote.  After agreeing on a place to meet,
you inquired, quote:  And you guys will do anything I
want?  Close quote.  It's a question.  And you guys will
do anything I want?  Question mark, close quote.

You ultimately proceeded to Xenia where you
picked up two minor girls.  You then drove them to
a park -- excuse me.

You ultimately proceeded to Xenia where you
picked up the two minor girls.  You then drove them to a
parking garage in Toledo, Ohio.  At this location you
had both J.C. and it says here your 12-year-old
companion.  Is that intended to remain, Mr. Tabacchi?

MR. TABACCHI:  Your Honor, it should read
"and her 12-year-old companion."

THE COURT:  It says "and her 12-year-old
companion."

MR. TABACCHI:  Yes.

1          THE COURT:  Is that accurate?

2          MR. TABACCHI:  That is accurate.

3          THE COURT:  All right.  At this location,

4    you had both J.C. and her 12-year-old companion perform

5    oral sex on him.  He further took pictures of the girls

6    posing either -- you further took pictures of the girls

7    posing either in their bras or with their bare breasts

8    exposed.  You then left the girls in the parking garage,

9    giving them each $20.

10         Around this time you participated in the

11   sexual activities with these minors you were also

12   downloading from the Internet known images of child

13   pornography.  For instance, you downloaded from the

14   Internet to your computer at least 61 images of child

15   pornography, at least one of which had moved or been

16   transported in interstate commerce.  Are those facts

17   correct?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Do you understand that those are

20   the facts behind the charge of coercion and enticement

21   of a minor to which you are pleading guilty?

22         THE DEFENDANT:  I understand.

23         THE COURT:  Do you have any questions at all

24   either as to the nature of this charge or what it is

25   you're pleading to?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Now, Mr. Williamson, even though

3    there is a mandatory minimum sentence involved and even

4    though the parties have agreed upon or agreed to

5    recommend to the Court a sentencing range, this is a

6    sentencing guidelines case still in the sense that the

7    Guidelines as always form a point of departure in my

8    determining a sentence sufficient but no more than

9    necessary to carry out the purposes of sentencing.  With

10   that in mind, I have a number of questions for you,

11   which I will ask seriatim before seeking an answer.

12          First, have you discussed the Guidelines

13   with your client?  Have you advised him of the mandatory

14   minimum sentence?  Have you advised him that the

15   Guidelines are advisory only, that they're no longer

16   binding on me?  Have you discussed with him -- or

17   calculated rather a sentencing guideline range?  And

18   have you discussed with him under this Plea Agreement

19   there is no way he could receive a sentence of less than

20   10 years.

21          MR. WILLIAMSON:  Yes to all of your

22   questions, your Honor.

23          THE COURT:  All right.  Would you share with

24   us any sentencing guideline range that you calculated?

25          MR. WILLIAMSON:  Your Honor, my calculation,

and I have shared this with my client, first of all,
that to the best of our knowledge and information he
would be in criminal career category number I, and that
given the base level with adjustments would result in a
calculation of number 34 which is 151 to 188 months and
provided he were to receive the deductions for
acceptance of responsibility would result in a number 31
with a range of 108 to 135 months.

THE COURT:  Or because of the mandatory
minimum in reality 120 to a hundred and 35 months.

MR. WILLIAMSON:  That is correct, your
Honor.  My client and I have discussed that.

THE COURT:  All right, sir.  Mr. Zobel, have
you had these discussions with your Attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  Knowing your lawyer as I do, I'm
certain he's very thoroughly explained the sentencing
laws to you.  However, I'm required to do so one more
time here in this courtroom.  My task as a judge is to
impose a sentence that is sufficient, in other words,
enough, but no more than necessary to carry out the
purposes of sentencing.  The way I get to such a
sentence is first to determine a sentencing guideline
range.  Now that range isn't binding on me.  In other
words, I don't have to sentence you within that range

but I am required to at least consider it along with all
of the other factors of sentencing, do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  The way I get to such a range,
Mr. Zobel, is to look at two things.  First, I need to
learn all I can about the particular charge to which you
have pled guilty.  I need to know such things as whether
you've accepted responsibility, your role in the offense
and many other factors.  And based upon all of these
considerations and more, I come up with a certain total
of points, do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Then I look at your past
criminal record or lack of one and I come up with a
second total of points, a completely different point
total, do you understand?

THE DEFENDANT:  I understand.

THE COURT:  Then I take these two very
different point totals and I look at the law and the law
gives me a suggested range of sentencing which in your
case your Attorney estimates is somewhere between a
hundred and eight to a hundred and 35 months, somewhere
between nine years and eleven years, three months.  But
because there is a required ten-year or 120-month
minimum, that non-binding sentencing range in your case

is a hundred and 20 to a hundred and 35 months.  Do you
understand?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Now, it's important that you
understand that your Attorney's estimate of a guideline
sentencing range of a hundred and 20 to a hundred and 35
months that, while it's a very educated estimate, it's
an estimate only and that it's not the final decision on
the sentencing range.  The final decision will be
reached by the Court with the help of the probation
department and that if you and Mr. Williamson disagree
with my decision on the sentencing range, then you could
appeal that decision to a higher court known as the
Court of Appeals, do you understand?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Now once I have that sentencing
range determined, I put it aside for a moment and I
consider all of the other factors of sentencing.  For
example, again I have to make certain that I know all
there is to know about the particular charge to which
you are pleading guilty, I need to learn as much about
you as I can from your earliest years to the present
time.  I have to consider the public's interest in
safety and in fair punishment, punishment that will
promote for the law.  I have to consider the public's

interest in deterrence, in preventing you and others
from committing similar crimes of this nature in the
future. Then I have to see if there's anything that we
can do as a court to help you get your life back on
track. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Finally, I have to make certain
that whatever sentence I give you is not unreasonably
different from sentences I've given others who have
committed similar crimes in the past. Do you
understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, considering all of those
things including that non-binding sentencing range of a
hundred and 20 to a hundred and 35 months, I then come
up with a sentence that is sufficient, enough, but no
more than needed to carry out the purposes of
sentencing. And in your case that sentence could be
anywhere from 10 years to life imprisonment, do you
understand?

THE DEFENDANT: I do, your Honor.

THE COURT: Based on the Plea Agreement, you
and the government are recommending to me that I impose
a sentence of between a hundred and 20 months, 10 years
and a hundred and 80 months, 15 years, do you understand

that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that considering all of the factors of sentencing that we've just discussed, I will determine whether such a recommended sentence is sufficient but no more than needed to carry out the purposes of sentencing.  And if I feel it is, I will sentence you within that ten to 15-year range.  If I feel it isn't, if I feel it's not adequate, then I will offer you the opportunity to withdraw from the Plea Agreement, do you understand, sir?

THE DEFENDANT:  I understand.

THE COURT:  Now, in addition to a possible sentence of 10 years to life imprisonment, do you realize that you could be required to pay a fine of up to $250,000?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you realize that in addition you will be required to pay a one-hundred-dollar fine to a fund that the government uses to help crime victims?

THE DEFENDANT:  I understand.

THE COURT:  And do you understand that at the end of whatever sentence I give you that you will have to be supervised as though you were on parole in

1  your community for a period of at least five years and

2  it could be up to the rest of your life, do you

3  understand?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you feel, sir, that you fully

6  understand the fines and the penalties that could result

7  from a plea of guilty this afternoon?

8          THE DEFENDANT:  I believe so, your Honor.

9          THE COURT:  Has Mr. Williamson your lawyer

10  gone over all of this with you?

11          THE DEFENDANT:  He has.

12          THE COURT:  Has he told you anything

13  differently than I have?

14          THE DEFENDANT:  No, sir.

15          THE COURT:  Do you have any questions?

16          THE DEFENDANT:  No, sir.

17          THE COURT:  All right.  Now, have you told

18  your lawyer Mr. Williamson everything you know about

19  this case?  Not only Count 1, but all of the charges

20  against you?

21          THE DEFENDANT:  I have, your Honor.

22          THE COURT:  Have you held any information

23  back from him?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Is he as aware as you can make

him of the facts of this case?

THE DEFENDANT: He is.

THE COURT: Has Mr. Williamson told you that you basically have two choices and only two choices in this case. One is to plead not guilty to all charges and go to trial. The other choice is to work out a Plea Agreement with the government. Has he told you that those are your choices?

THE DEFENDANT: That has been my understanding, sir.

THE COURT: And has he told you this?

THE DEFENDANT: Yes, sir.

THE COURT: Has he told you that whatever choice you make must be yours and yours alone?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is the decision to plead guilty to Count 1 this afternoon your decision?

THE DEFENDANT: Yes, it is.

THE COURT: Is it your decision alone?

THE DEFENDANT: It is.

THE COURT: Now, when Mr. Williamson was discussing with you your other choice, the one not taken, pleading not guilty and going to trial, did he discuss with you things you could do to help defend yourself either before trial or during trial?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And to the extent you're able to

3     tell, are you satisfied with the advice and the legal

4     services that Mr. Williamson has given you?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Without going over them again at

7     this point, sir, are you aware of the fines and the

8     penalties that could result from a plea of guilty this

9     afternoon?

10          THE DEFENDANT:  I am.

11          THE COURT:  Are you presently on probation

12     or parole?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  Now, based on the little that

15     we've discussed and on the more extensive discussions

16     you've had with your Attorney, is it still your wish to

17     enter this plea of guilty?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  You have, sir, a number of

20     rights given you by law and by the constitution that

21     you're going to be giving up by pleading guilty this

22     afternoon.  Knowing your lawyer as I do, I'm certain

23     he's gone over each and every one of these rights with

24     you.  I'm required to do so one more time here in this

25     courtroom.

1    One of the rights you have that you give up

2 is the right to plead not guilty to all charges and to

3 go to trial, and at that trial to stick with these pleas

4 of not guilty throughout, do you understand?

5    THE DEFENDANT:  Yes, sir.

6    THE COURT:  Another right you have that you

7 give up by pleading guilty is the right to plead not

8 guilty to all charges, to go to trial, and at that trial

9 to claim the benefit of what we call the presumption of

10 innocence.  That simply means that you begin the trial

11 presumed to be innocent, in other words, not guilty of

12 the charges against you, and the jury is told that you

13 must be found innocent, found not guilty on any charge

14 on which the government doesn't prove your guilt by

15 proof beyond a reasonable doubt at trial, do you

16 understand?

17    THE DEFENDANT:  Yes, sir.

18    THE COURT:  Do you realize that that's

19 simply a long way of saying that you're innocent on a

20 particular charge unless the government is able to prove

21 your guilt on that charge by proof beyond a reasonable

22 doubt at trial, do you understand?

23    THE DEFENDANT:  I do, sir.

24    THE COURT:  Another right you have, sir, is

25 the right to plead not guilty to all charges, to go to

trial, and at that trial to have those charges heard by a jury of 12 persons, do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that those 12 persons would hear all of the facts of your case, the facts that the government brings out and any facts that you and Mr. Williamson decide to bring forth and then at the end of the trial the jury would decide whether you were guilty or not guilty on any one or more or all of the charges, do you understand?

THE DEFENDANT:  I do, sir.

THE COURT:  And do you understand that the right to a jury trial is a right given you by law and by the constitution and that the only way you'll not have a jury trial is if you come here into court, tell me that you understand you have the right to such a trial but wish to give it up, do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, is this a correct statement?  You understand you have the right to a jury trial but you wish to give up that right in order to plead guilty this afternoon to Count 1 of the Indictment?

THE DEFENDANT:  That is correct, sir.

THE COURT:  All right.  Do you understand

that you do have the right to plead not guilty to all

charges and to go to trial, and if the government would

agree you could go to trial without a jury, you would

waive or give up your right to a jury trial and ask the

judge alone to hear your case and to decide your guilt

or innocence on any one or more or all of these charges,

do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that by

pleading guilty this afternoon you're giving up whatever

rights you may later be found to have with regard to a

jury deciding sentencing issues and you are agreeing to

allow me to do so, do you understand?

THE DEFENDANT:  I do, your Honor.

THE COURT:  Do you understand that you have

the right to plead not guilty to all charges, to go to

trial, and at that trial to have here in this courtroom

all of the people who accuse you of these charges so

that your lawyer, Mr. Williamson, can question or

cross-examine those people under oath at trial, do you

understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand you have the

right to plead not guilty to all five charges and to go

to trial, and at that trial force the government to try

1 to prove your guilt beyond a reasonable doubt on each

2 charge to the satisfaction of all 12 jurors, do you

3 understand?

4     THE DEFENDANT:  Yes, your Honor.

5     THE COURT:  Do you understand that as

6 someone who's been charged with crimes such as you've

7 been by an Indictment that it's not your job to prove

8 that you're innocent on any charge, do you understand?

9     THE DEFENDANT:  Yes, your Honor.

10     THE COURT:  Do you understand that you have

11 absolutely nothing at all to prove in this case?

12     THE DEFENDANT:  Yes, your Honor.

13     THE COURT:  Do you understand that the only

14 proving that has to be done has to be done by the

15 government?

16     THE DEFENDANT:  I understand.

17     THE COURT:  And do you understand that it's

18 the government's job to try to prove your guilt beyond a

19 reasonable doubt on each charge to the satisfaction of

20 all the jurors at trial, do you understand?

21     THE DEFENDANT:  Yes, sir.

22     THE COURT:  And do you understand that on

23 any charge on which the government doesn't or can't

24 prove your guilt beyond a reasonable doubt that you

25 would be found not guilty, do you understand?

1             THE DEFENDANT: I understand.

2             THE COURT: In spite of what we've just

3 talked about, Mr. Zobel, and agreed to, has anyone told

4 you that you did have to prove that you were innocent on

5 any charge?

6             THE DEFENDANT: No, your Honor.

7             THE COURT: Has anyone told you that you had

8 anything at all to prove?

9             THE DEFENDANT: No, your Honor.

10             THE COURT: Do you understand that you have

11 the right to plead not guilty on all charges, to go to

12 trial and at that trial to ask your lawyer, Mr.

13 Williamson, to issue court orders that we call subpoenas

14 that would bring here into this courtroom anyone who

15 might be able to testify for you as your witness in your

16 defense at trial, do you understand?

17             THE DEFENDANT: I understand.

18             THE COURT: Do you understand that by

19 pleading guilty this afternoon you're giving up your

20 right to appeal anything that has occurred in your case

21 before coming to court today, do you understand?

22             THE DEFENDANT: Yes, your Honor.

23             THE COURT: Do you understand that you have

24 what we call an absolute right to remain silent, that

25 you're not required to make any statement at all about

this case or plead guilty, do you understand?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Do you understand that you're not required to plead guilty to anything that might bring about the fines and the penalties that we've discussed?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Now once again, sir, but now for the last time, are you aware that a plea of guilty to this charge carries a sentence of anywhere from 10 years to life imprisonment?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Are you aware that it carries a possible fine of up to $250,000 and that, in addition, you will have to pay a one-hundred-dollar fine to a fund that the government uses to help crime victims, do you understand?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Do you understand that at the end of any prison sentence I impose that you will have to be supervised in your community as though you were on parole for a period of at least five years and it could be up to the rest of your life, do you understand?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Again, I will ask you if you

1  feel you fully understand the fines and penalties that

2  could result from a plea of guilty this afternoon?

3              THE DEFENDANT:  I believe I do, your Honor.

4              THE COURT:  Has Mr. Williamson your lawyer

5  gone over all of that with you?

6              THE DEFENDANT:  He has.

7              THE COURT:  Has he told you anything

8  differently than I have?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  Do you have any questions?

11             THE DEFENDANT:  No.  Thank you.

12             THE COURT:  Do you understand that if you

13  were to plead not guilty to these charges and to go to

14  trial that at that trial you would not have to testify

15  or call witnesses to testify for you unless you chose to

16  do so, do you understand?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Do you understand that by

19  pleading guilty this afternoon you're giving up your

20  right to a trial in your case?

21             THE DEFENDANT:  I understand.

22             THE COURT:  And do you understand that if I

23  accept this plea of guilty there will be no trial in

24  your case?

25             THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  And do you understand the only

2   other time you'll be here in this courtroom on your case

3   is after I have reviewed the Presentence Report and have

4   called you in for sentencing, do you understand?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand that by

7   pleading guilty this afternoon you're giving up each and

8   every one of these rights that we've just discussed?

9          THE DEFENDANT:  I understand.

10          THE COURT:  Do you feel you understand these

11   rights?

12          THE DEFENDANT:  Yes, I believe I do, sir.

13          THE COURT:  Do you have any questions at all

14   about them?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Has your lawyer, Mr. Williamson,

17   gone over each and every one of these rights with you?

18          THE DEFENDANT:  He has.

19          THE COURT:  Has he told you anything

20   differently than I have?

21          THE DEFENDANT:  No, he has not.

22          THE COURT:  Do you have any questions?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  Do you give these rights up at

25   this time?

1    THE DEFENDANT:  I do.

2    THE COURT:  All right.  Mr. Williamson, why

3    don't you and your client be comfortable at counsel

4    table while Mr. Tabacchi reads the Plea Agreement into

5    the record.

6    MR. WILLIAMSON:  Thank you, your Honor.

7    THE COURT:  Mr. Tabacchi.

8    MR. TABACCHI:  Thank you, your Honor.  The

9    following is the plea agreement between the United

10   States of America and David Zobel.  Pursuant to Rule

11   11(c)(1)(C) of the Federal Rules of Criminal Procedure,

12   Defendant David Zobel individually and through his

13   Attorney, David Williamson, and the United States

14   Attorney's office for the Southern District of Ohio,

15   collectively, the parties, hereby agree as follows.

16   1.  Defendant agrees to plead guilty to

17   Count 1, coercion and enticement of a minor in violation

18   of Title 18, United States Code, Section 2422(b), of the

19   Indictment in this case.  Defendant admits that he is in

20   fact guilty of the offense charged in Count 1 of the

21   Indictment, and that the Statement of Facts, which is

22   attached hereto as Exhibit A and incorporated herein by

23   reference, is true and correct.

24   2.  The statutory maximum sentence that the

25   Court can impose for a violation of Title 18, United

States Code, Section 2422(b) is:  At least 10 years and
up to life imprisonment, at least five years and up to a
lifetime period of supervised release, a fine of
$250,000 and a mandatory special assessment of $100.

        3.  Defendant understands that Defendant
will be required to pay full restitution to the victims
of the offense.  Defendant agrees that Defendant will
not seek the discharge of any restitution obligation in
whole or in part in any present or future bankruptcy
proceeding.

        4.  Defendant understands that as a
condition of supervised release under 18 U.S.C. Section
3583(d) he will be required to register as a sex
offender.

        5.  Pursuant to Rule 11(c)(1)(C) of the
Federal Rules of Criminal Procedure, Defendant and the
USAO agree that an appropriate disposition of this case
is that the Court impose a sentence within the range of
a hundred and 20 to a hundred and 80 months
imprisonment, up to a lifetime period of supervised
release, a fine and restitution as determined by the
Court and a one-hundred-dollar mandatory special
assessment.  Defendant understands that the Court will
order the United States probation office to prepare a
Presentence Investigation Report.  Defendant further

understands that the Court may accept this Plea
Agreement, reject it or defer decision until the Court
has reviewed the PSR.  Defendant further understands
that, if the Court accepts this Plea Agreement, the
agreed disposition herein will be included in the
judgment of conviction.  The parties agree that, if the
Court rejects this Plea Agreement, Defendant may
withdraw from this Plea Agreement so long as the
Defendant has not breached this agreement.  If the Court
rejects the Plea Agreement and Defendant does not
withdraw from this Plea Agreement, Defendant may be
sentenced to terms less favorable than those
contemplated in the Plea Agreement.  The USAO may, in
its discretion, withdraw from this Plea Agreement if the
Defendant breaches this Plea Agreement or the Court
rejects the Plea Agreement.

6.  To assist the Court in assessing the
propriety of the disposition set forth in paragraph 5,
the parties agree for the purpose of calculating an
advisory sentencing guideline range to the following
Base Offense Level and specific offense characteristics
which the parties recommend be considered by the Court
at the time of sentencing.

Namely, the Base Offense Level of 28 under
U.S.S.G. Section 2G1.13(a)(3), namely a conviction under

1  18 U.S.C. Section 2422(b).  A two-level enhancement

2  under U.S.S.G. Section 2G1.3(b)(3) capital (B), use of a

3  computer.  A two-level enhancement under U.S.S.G.

4  Section 2G1.3(b)(4), an offense involved commission of a

5  sexual act.  And a two-level adjustment under U.S.S.G.

6  Sections 2G1.3(d) and 3D1.4, an offense involved

7  multiple minors.

8          To further assist the Court in assessing the

9  propriety of the disposition set forth in paragraph 5,

10  the parties reserve the right to argue and offer

11  supporting evidence that other specific offense

12  characteristics, adjustments and departures are

13  appropriate as well as offer evidence and argument

14  relating to the factors of sentencing set forth in 18

15  U.S.C. Section 3553(a).

16          7.  Defendant agrees that he will plead

17  guilty as set forth in this agreement and will pay to

18  the United States clerk of court prior to or at the time

19  of sentencing the mandatory special assessment in this

20  case.

21          8.  Defendant further agrees that he is not

22  a prevailing party as defined by the Hyde Amendment,

23  Public Law 105-119, Title VI, November 26, 1997, set

24  forth as a Statutory Note under 18 U.S.C. 3006A, and

25  hereby expressly waives filing any suit or asserting any

1  claim against the United States, including its agents

2  and employees under this provision.

3         9.  If the Defendant complies fully with all

4  Defendant's obligation's under this agreement:

5         A.  The USAO as well as the United States

6  Attorney's office for the Eastern District of Michigan

7  agree not to file additional criminal charges against

8  Defendant for violations both occurring in the Southern

9  District of Ohio and the Eastern District of Michigan

10  during the time period charged in the Indictment and

11  arising out of the facts set forth in the attached

12  Statement of Facts, including charges under 18 U.S.C.

13  Sections 2251(a), attempted production of child

14  pornography, 2252(a)(2), receipt and distribution of

15  child pornography, and 2252(a)(4), possession of child

16  pornography.  Defendant understands that the USAO and

17  the United States Attorney's office for the Eastern

18  District of Michigan are free to prosecute Defendant for

19  any unrelated, unlawful past conduct or any unlawful

20  conduct that occurs after the date of this agreement.

21         B.  The USAO agrees, provided that the

22  Defendant demonstrates an acceptance of responsibility

23  for the offenses up to and including the time of

24  sentencing, to recommend a two-level reduction in the

25  applicable sentencing guideline offense level pursuant

to U.S.S.G. Section 3E1.1, and to recommend and, if necessary, move for an additional one-level reduction if available under that section.

C. The USAO agrees to move to dismiss Counts 2 through 5 of the Indictment. Defendant understands that the Court may consider dismissed and uncharged counts in determining the applicable sentencing guideline range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and a determination of the sentence to be imposed after a consideration of the sentencing guidelines and all other relevant factors.

D. To recommend that Defendant be sentenced within the applicable sentencing guideline range provided that the total Adjusted Offense Level as calculated by the Court is at least 31 and provided that the Court does not depart downward in offense level or a criminal history category.

10. Except as set forth herein, there are no promises, understandings or agreements between the USAO and Defendant or Defendant's counsel. Except as set forth in paragraph 9(a) above, this agreement binds only the USAO and does not bind any other federal, state or local prosecuting authority.

11. By signing this agreement, the

Defendant acknowledges that he has read this agreement, that he has carefully discussed the terms of this agreement with his Attorney, and that he understands and accepts those terms voluntarily without duress or coercion and of his own free will.  Defendant further agrees he is satisfied with the representation of his Attorney in this matter.

Signed by all the parties, your Honor, including a facsimile signature from John O'Brien, the Assistant United States Attorney in the Eastern District of Michigan who is signing off on the Plea Agreement for that district.

THE COURT:  Thank you, Mr. Tabacchi.  Mr. Williamson, if you and your client would be good enough to return.

(Counsel and the Defendant approached the lectern.)

THE COURT:  Mr. Williamson, you've heard the reading of the Plea Agreement.  Is that your understanding of it?

MR. WILLIAMSON:  It is, your Honor.

THE COURT:  Have you gone over it with your client and explained it to him?

MR. WILLIAMSON:  I have, your Honor.

THE COURT:  Do you feel he understands it

1   and is prepared to accept it?

2           MR. WILLIAMSON:  I do.

3           THE COURT:  Mr. Zobel, you've heard the

4   reading of the Plea Agreement.  Is that your

5   understanding of it?

6           THE DEFENDANT:  It is, your Honor.

7           THE COURT:  Has Mr. Williamson gone over it

8   with you and explained it to you?

9           THE DEFENDANT:  He has.

10          THE COURT:  Have you reviewed it yourself?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Do you feel that you understand

13  it?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Do you have any questions at all

16  about it?

17          THE DEFENDANT:  No, your Honor.

18          THE COURT:  Did you sign it?

19          THE DEFENDANT:  I have.

20          THE COURT:  And do you accept it?

21          THE DEFENDANT:  I do.

22          THE COURT:  All right.  The Court will defer

23  a decision as to whether to accept the Plea Agreement

24  until the time of sentencing, the period after the Court

25  has reviewed the Presentence Investigation and all other

relevant information.

        Mr. Zobel, other than in the Plea Agreement, has anybody at all made you any promises in order to get you to plead guilty?

        THE DEFENDANT:  No, your Honor.

        THE COURT:  Has anybody forced you or threatened you or put any pressure on you of any kind in order to get you to plead guilty?

        THE DEFENDANT:  Does that include threatening to obtain further Indictments and ask that the sentences be consecutive?

        THE COURT:  That representation was made to you?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Okay.  Has that representation caused you to enter this plea of guilty?

        THE DEFENDANT:  No, your Honor.

        THE COURT:  Has it played a factor?

        THE DEFENDANT:  It has been a factor, yes.

        THE COURT:  All right.  One of the questions I will ultimately be asking you is whether your plea of guilty to this charge is voluntary?

        THE DEFENDANT:  It is, your Honor.

        THE COURT:  Are you pleading guilty to it because you feel that you are guilty of it?

```
 1              THE DEFENDANT:  Yes, your Honor.
 2              THE COURT:  Is it correct to say, and I
 3    don't want to put words in your mouth, that the threats
 4    of additional prosecutions has not made you admit guilt
 5    to a charge for which you feel you are not guilty, is
 6    that correct?
 7              THE DEFENDANT:  That's correct.
 8              THE COURT:  Mr. Tabacchi, I do not -- and
 9    I'm going to ask Mr. Williamson the same question.  I do
10    not feel the need for further questioning on this point.
11    Your position.
12              MR. TABACCHI:  I agree, your Honor.
13              THE COURT:  Mr. Williamson.
14              MR. WILLIAMSON:  I agree, your Honor.
15              THE COURT:  All right, sir.  Has anybody
16    promised you a particular sentence in terms of months or
17    years?
18              THE DEFENDANT:  No, your Honor.
19              THE COURT:  Has anybody guaranteed you that
20    whatever sentence I give you will be within the ten to
21    15-year range?
22              THE DEFENDANT:  Yes, your Honor.
23              THE COURT:  That has been a guarantee?
24              THE DEFENDANT:  It has been my understanding
25    that the terms of the 11(c)1(C) guarantee that it will
```

be within 10 to 15 years.

THE COURT:  All right.  Then I'll ask you to harken back to what I said earlier.  Certainly, I will consider that, along with the non-binding sentencing range and all of the other factors of sentencing but I am not guaranteeing you a sentence between 10 or 15 years.  All I'm guaranteeing you is that I will consider it along with all of the other factors, and if I find that I cannot impose a sentence of between ten and 15 years, you will have the right, if you wish, to withdraw your Plea Agreement, do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Is that consistent with everything that Mr. Williamson has discussed with you?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.  Has he guaranteed you or has anybody guaranteed you that I'm going to sentence you between 10 and 15 years?

THE DEFENDANT:  No, your Honor.

THE COURT:  Do you understand that if I wish, if I feel that 15 years is not a heavy enough sentence, I'll give you a chance to withdraw your plea. We can go to trial.  Do you understand on this charge if you're convicted you could wind up with a life sentence?

THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  Has anybody told you to the

2    contrary?

3          THE DEFENDANT:  No.

4          THE COURT:  Has anyone told you that there's

5    any way for you to get a sentence of less than 10 years

6    on this charge?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  Has anybody promised you a

9    particular fine in terms of money?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Has anyone told you that you

12   wouldn't have to pay the special one-hundred-dollar fine

13   to the victims' fund?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  Has anyone told you that upon

16   release from whatever sentence I give you that you will

17   not have to be supervised in your community as though

18   you were on parole?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  Do you understand that as a

21   result of this plea you will have to comply with sex

22   registration laws, do you understand?

23          THE DEFENDANT:  I understand, sir.

24          THE COURT:  Has anyone told you that that

25   would not happen?

1               THE DEFENDANT:  No, sir.

2               THE COURT:  Are you pleading guilty to this

3  charge in Count 1 voluntarily?

4               THE DEFENDANT:  I am.

5               THE COURT:  Are you pleading guilty to it

6  because you feel that you are guilty of it?

7               THE DEFENDANT:  Yes, sir.

8               THE COURT:  Now, Mr. Tabacchi, can we agree,

9  you and I, that any facts you read or would read would

10 be substantially similar to the second version of the

11 facts that I read?

12              MR. TABACCHI:  Yes, your Honor.

13              THE COURT:  We'll then dispense with any

14 further reading of the facts.  Mr. Zobel, I understand

15 you're in custody but I still have to ask this question.

16 Within the past 12 to 24 hours, have you had anything to

17 drink or are you on any drugs or prescription medication

18 that would make it difficult for you to understand me as

19 I sit here talking to you?

20              THE DEFENDANT:  No, your Honor.

21              THE COURT:  Do you feel you fully understood

22 all that we've gone over?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Do you have any questions?

25              THE DEFENDANT:  No, sir.

1          THE COURT:  Mr. Williamson, do you consider

2   your client competent to enter this plea of guilty?

3          MR. WILLIAMSON:  I do, your Honor.

4          THE COURT:  Do you feel he understands his

5   rights and is prepared to give them up?

6          MR. WILLIAMSON:  I do.

7          THE COURT:  Mr. Zobel, do you have any

8   questions on any subject at this point?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  Do you understand your rights?

11          THE DEFENDANT:  I believe I do, sir.

12          THE COURT:  Do you give those rights up at

13   this time?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  How then do you wish to plead to

16   a charge of coercion and enticement of a minor?

17          THE DEFENDANT:  I wish to plead guilty, your

18   Honor.

19          THE COURT:  All right, sir.  Mr. Williamson,

20   can we agree, you and I, that your client's activities

21   with J.C. during January 2009 constituted unlawful

22   sexual conduct with minors under the Ohio Revised Code?

23          MR. WILLIAMSON:  I agree, your Honor.

24          THE COURT:  All right, sir.  Based on the

25   dialogue do that this Court has had with the Defendant

over the past 50 to 55 minutes or so and based upon his

appearance and demeanor here in this courtroom, the

Court would make the following seven findings.

First, Defendant is in full possession of

his faculties and is competent to plead guilty.

Second, he is not under the apparent

influence of narcotics, hallucinogen or alcohol.

Third, he understands the nature of the

charge to which the plea is offered and the penalties

provided by law.

Fourth, he understands his Constitutional

Rights and he knowingly and intelligently gives them up.

Fifth, he is aware of the Plea Agreement

made in his behalf and it is satisfactory to him.

Sixth, there is a factual basis for his

plea.

Seventh, he has offered to plead guilty

voluntarily because he is, in fact, guilty as charged.

Accordingly, the Court would accept the plea of guilty

for now and it will be made a permanent part of the

record in this case.

Now, Mr. Williamson, anticipating your

request, we will refer your client's case to the United

States Probation Department for Presentence Report.

Final followup or disposition will be had after such

1  time as the report has been prepared and both you and

2  your client have had the opportunity to review it.  Bond

3  previously denied will likewise be denied at this point

4  pending further order of the Court.

5            Cindy, have we a recommended sentencing

6  date?

7            THE COURTROOM DEPUTY CLERK:  Thursday, April

8  8th at three o'clock.

9            THE COURT:  Thursday, April 8th at three

10  o'clock, if convenient, sir.

11            MR. WILLIAMSON:  That's fine with me, your

12  Honor.

13            THE COURT:  All right.  Mr. Tabacchi.

14            MR. TABACCHI:  Yes, your Honor.

15            THE COURT:  Mr. Williamson, anything

16  further?

17            MR. WILLIAMSON:  No, your Honor.

18            THE COURT:  Mr. Tabacchi?

19            THE DEFENDANT:  No, your Honor.

20            THE COURT:  Mr. Zobel, do you have any

21  questions?

22            THE DEFENDANT:  No, your Honor.

23            THE COURT:  Cindy, did I get that time

24  correct?

25            THE COURTROOM DEPUTY CLERK:  Yes, sir.

1          (Proceedings concluded at 1:14 p.m.)

2               C-E-R-T-I-F-I-C-A-T-E

3          I, Debra Lynn Futrell, Notary Public in and

4    for the State of Ohio at large,

5          Do Hereby Certify that the foregoing pages

6    are a true and correct transcription of my stenographic

7    notes taken of the proceedings held in the

8    afore-captioned matter before the Honorable Walter

9    Herbert Rice, Senior District Judge, to the best of my

10   ability.

11

12

13        S/Debra Lynn Futrell
          _____
14        Debra Lynn Futrell, RMR-CRR
          Notary Public, State of Ohio
15        My Commission Expires 12-27-13

16

17

18

19

20

21

22

23

24

25